# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| VENNWEST GLOBAL TECHNOLOGIES INC., derivatively on behalf of HEALTH DISCOVERY CORPORATION, <br><br> Plaintiff, <br><br> v. <br><br> GEORGE H. MCGOVERN, III, COLLEEN M. HUTCHINSON, WILLIAM F. FROMHOLZER, JAMES MURPHY, EDWARD MORRISON, MARTY DELMONTE, AND JAMES DENGLER <br><br> Defendants, <br> - and – <br><br> HEALTH DISCOVERY CORPORATION, a Georgia Corporation, <br><br> Nominal Defendant. | **VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT** <br><br> **Civil Case No.** <br><br> _____ <br><br> **JURY TRIAL DEMANDED** |

## VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

Plaintiff, VennWest Global Technologies Inc. ("Plaintiff"), by and through its

attorneys, files this Verified[1] Shareholder Derivative Complaint against Health

---

[1]     Attached hereto as Exhibit "1" is a true and correct copy of the signed
verification of Plaintiff's Chief Executive Officer, Laurie Venning.

Discovery Corporation ("HDC" or the "Company"); George H. McGovern, III ("McGovern"); Colleen M. Hutchinson ("Hutchinson"); William F. Fromholzer ("Fromholzer"); James Murphy ("Murphy"); Edward Morrison ("Morrison"); Marty Delmonte ("Delmonte"); and James Dengler (collectively "Defendants"), and avers as follows:

## PARTIES

1.      Plaintiff is a business corporation organized under the laws of the Province of Alberta, Canada, with its principal place of business in Alberta.

2.      HDC is a publicly-traded corporation, organized under the laws of Georgia, with its principal place of business in Georgia.

3.      On information and belief, Defendant McGovern is a citizen of Pennsylvania.  McGovern is Chief Executive Officer ("CEO") and a member of the Board of Directors (the "Board") of HDC.

4.      On information and belief, Defendant Fromholzer is a citizen of Pennsylvania.  Fromholzer is a member of the Board.

5.      On information and belief, Defendant Murphy is a citizen of Pennsylvania.  Murphy is a member of the Board.

6.      On information and belief, Defendant Morrison is a citizen of Georgia. Morrison is a member of the Board.

7.     On information and belief, Defendant Delmonte is a citizen of Georgia. Delmonte is President, Chief Operating Officer ("COO") and a member of the Board.

8.     On information and belief, Defendant Dengler is a citizen of Pennsylvania.  Dengler is McGovern's business associate and friend.

## JURISDICTION

9.     This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(2), in that it is a civil action between citizens of a state and citizens of a foreign state, in which the matter in controversy exceeds, exclusive of interest and costs, $75,000.

10.     Venue is proper over this action pursuant to 28 U.S.C. § 1391, in that HDC is a corporation organized under the laws of Georgia, with its principal place of business at 2002 Summit Boulevard, NE, Suite 300, Brookhaven, DeKalb County, Georgia 30319, and a substantial portion of the events hereinafter occurred within the Northern District of Georgia.

## ALLEGATIONS COMMON TO ALL CLAIMS FOR RELIEF

### The McGovern-Dengler Loans

11.     On information and belief, Defendants have participated in a deliberate course of action designed to gain and to exert control over the Company, and to

3

divert corporate assets from the Company.  Defendant McGovern and Defendant Directors (a) approved self-interested transactions, and (b) awarded themselves bonuses and stock options, while (c) diluting public share holdings, and (d) violated the Georgia Business Corporation Law, and federal securities laws and regulations.

***The October 2017 Events***

12.    On information and belief, Defendants participated in or approved three loans from McGovern and Dengler (the "McGovern-Dengler Loans") to the Company.

13.    The McGovern-Dengler Loans are self-interested transactions because McGovern acted as both the lender to the Company and its CEO.

14.    On or about October 23, 2017, McGovern and Dengler loaned the Company $300,000 (the "First Loan").[2]  The First Loan:

a.    accrued interest at a rate of eight percent (8%) per annum and matured on January 1, 2019 (a total maturity period of fourteen (14) months);

b.    accrued interest at a rate that was not commercially reasonable;

c.    was secured by all of the Company's assets, intellectual property, and all past, current, and future agreements involving the Company;

---

[2]    A Form 8-K filed by the Company on or about October 27, 2020 describes the First Loan.

       d.     gave McGovern and Dengler the right to convert the principal and unpaid interest under the loan into common stock of HDC at the conversion price of $.004 (four tenths of a penny) per share; and

       e.     gave McGovern and Dengler the right to appoint two additional members to the Board.

15.    On information and belief, the First Loan required approval by the Board.  At the time, the Board was composed of McGovern, Delmonte, Murphy, Morrison, and Kevin Kowbel ("Kowbel").

16.    On information and belief, Kowbel expressed concerns about the First Loan, including the potential for dilution of HDC's shares.

17.    On information and belief, Kowbel received explanatory materials regarding the First Loan less than two hours before the Board meeting at which the Board would be asked to approve the First Loan.

18.    On information and belief, all other Directors received such materials regarding the First Loan several days before that Board meeting.

19.    On information and belief, the Board did not investigate whether any other shareholder or institutional lender would lend the Company $300,000 on the same or better terms before approving the First Loan.  Moreover, the Board did not seek to negotiate the terms of the First Loan.

113290680.v1

20.    The Company did not file a Form 8-K with the SEC disclosing the Company's need for funds and offering alternative opportunities for investment and solutions before approving the First Loan.

21.    On or about October 23, 2017, on information and belief, the Board, by votes of Delmonte, Murphy, and Morrison, approved the First Loan.  Kowbel abstained from voting on the First Loan.

22.    The Board's approval of the First Loan was invalid because the directors who approved the First Loan were not "qualified" directors (*i.e.*, "independent" directors), as required by O.C.G.A. § 14-2-862.

23.    On or about October 23, 2017, the same day on which the Directors approved the First Loan, the Board also voted to grant new stock options to McGovern, Delmonte, Murphy, and Morrison.

a.    McGovern and Delmonte each received options to purchase 3,500,000 shares, exercisable at $.003 per share.

b.    Murphy and Morrison each received options to purchase 2,000,000 shares, exercisable at the same price.

c.    Kowbel did not receive any stock options.

113290680.v1

24.    On information and belief, the new stock options were granted to McGovern, Delmonte, Murphy, and Morrison as a reward of their support for, and approval of, the First Loan.

25.    The Board's approval of the stock options was invalid because the directors who approved these transactions were not "qualified" directors (*i.e.*, "independent" directors), as required by O.C.G.A. § 14-2-862.

26.    On or about October 23, 2017, the Directors also voted to pay McGovern a salary of $150,000 annually, retroactive to the first day of his employment as CEO.

27.    This compensation was approved, and was later paid, in contravention of McGovern's prior representations, made in a filing with the SEC, that he would not receive compensation for serving as the CEO.[3]

***The May 2018 Events***

28.    On or about May 9, 2018, McGovern and Dengler exercised the rights they acquired under the First Loan and appointed Hutchinson and Fromholzer to the Board as directors.

---

[3]    In the Company's Form 8-K, dated February 24, 2017, and filed with the SEC on March 3, 2017, Defendant McGovern represented that he would forego compensation for serving as CEO.

113290680.v1

29.     On information and belief, Hutchinson is McGovern's daughter.

30.     On information and belief, Fromholzer is a friend and business associate of McGovern and Dengler.

### The April 2019 Events[4]

31.     On or about April 22, 2019, the Board — composed of McGovern, Delmonte, Murphy, Morrison, Hutchinson, and Fromholzer—voted to accept a proposal from McGovern and Dengler that extended the maturity date of the First Loan from January 1, 2019 to July 31, 2019, in exchange for granting McGovern and Dengler additional rights (the "First Loan Maturity Date Extension").

   a.     Specifically, the Board voted to grant McGovern and Dengler a five percent (5%) share of any potential award in the Company's arbitration against NeoGenomics (the "NeoGenomics Arbitration"), up to a cap of $1,000,000, plus principal and interest on the First Loan.

---

[4]     On April 26, 2019, the Company filed two Forms 8-K describing these events. One Form 8-K concerned the Company's extension of the maturity date of the First Loan, as well as the Company's entering into the Second and Third Loans. The other Form 8-K concerned the final arbitration award in the Company's arbitration against NeoGenomics Laboratories Inc. ("NeoGenomics").

b.      In fact, on April 24, 2019, just two days after the Board approved this proposal, the arbitration panel for the NeoGenomics Arbitration ruled in favor of HDC, awarding $6,608,694.48 to the Company.

32.     On or about April 22, 2019, the Board also approved a second and third loan by McGovern and Dengler to the Company.

33.     On or about April 22, 2019, McGovern and Dengler advanced $62,000 to HDC (the "Second Loan").

a.      In consideration, HDC agreed to repay $62,000, plus up to an additional $310,000 of the potential recovery in the NeoGenomics Arbitration.

34.     On or about April 22, 2019, McGovern and Dengler advanced $200,000 to HDC (the "Third Loan").

a.      The Third Loan accrued interest at eight percent (8%) per annum and came due on July 31, 2019.

b.      The Third Loan also gave McGovern and Dengler the right to convert the loan into shares of HDC Series D Preferred Stock.  Each share of Series D Preferred Stock would have ten votes per share in comparison to common stock.

c.      The terms of the Series D Preferred Stock, including the voting rights of the shares, were not disclosed in the Form 8-K reporting the event filed by the Company on or about April 26, 2019.

113290680.v1

35.     The timing of the First Loan Maturity Date Extension, the Second Loan, and the Third Loan is suspicious.   The arbitration panel in the NeoGenomics Arbitration entered an award in favor of the Company on or about April 24, 2019, just two days after the Company approved the First Loan Maturity Date Extension, the Second Loan, and the Third Loan.   Yet, the Form 8-K describing the terms of the First Loan Maturity Date Extension, the Second Loan, and the Third Loan, represented that the Company had no assurances that it would receive an award in the NeoGenomics Arbitration.

36.     On information and belief, at the time the Third Loan was executed, the Company had not authorized the issuance of a class of shares known as Series D Preferred Stock.

37.     The Company did not file a Form 8-K with the SEC disclosing the Company's need for funds and offering alternative opportunities for investment and solutions before approving the Second Loan or the Third Loan.

38.     On information and belief, the Board did not seek to negotiate the terms of the Second Loan or the Third Loan.

39.     On information and belief, the Board did not investigate whether any other shareholder or institutional lender would lend to the Company on the same or better terms before approving the Second Loan or the Third Loan.

113290680.v1

40.     On information and belief, the Board's approval of the First Loan share conversion proposal, the Second Loan, and the Third Loan was invalid because the directors who approved these transactions were not "qualified" directors (*i.e.*, "independent" directors), as required by O.C.G.A. § 14-2-862.

***The June 2019 Events***

41.     On or about June 10, 2019, the Company granted each of Defendants Fromholzer, Hutchinson, Morrison and Murphy a $20,000 bonus and an option to purchase 2,000,000 shares of the Company's common stock at an exercise price of $0.07 per share.  The options vested immediately and expire June 10, 2029.

***The December 2019 and January 2020 Events***

42.     On information and belief, the Company did not pay off the First Loan by January 1, 2019 or by July 31, 2019, the maturity date of the First Loan and of the First Loan Maturity Date Extension, respectively.

43.     Accordingly, effective December 31, 2019, McGovern and Dengler converted the unpaid principal and interest on the First Loan into 86,927,397 shares of the Company's common stock pursuant to the terms of the First Loan (the "First Loan Share Conversion").

113290680.v1

44.    Effective December 31, 2019, McGovern and Dengler also converted the Third Loan into 21,158,953 shares of the Company's Series D Preferred Stock (the "Third Loan Share Conversion").

45.    However, as set forth above, the Company had not authorized the issuance of a class of shares knowns as Series D Preferred Stock, and therefore had no such shares to transfer to McGovern and/or Dengler.

46.    On information and belief, the preferred stock issued pursuant to the Third Loan also granted McGovern and Dengler approximately 42,317,906 warrants to purchase one share per warrant of HDC's common stock, at an exercise a price of $0.004 per share.  The warrants expire July 31, 2029.

47.    The Company, however, had not authorized or issued shares of common stock sufficient to support the exercise of these warrants, and the Company's shareholders had not authorized an increase of shares of common stock to be issued upon exercise of these warrants.

48.    On or about January 9, 2020, the Company filed a Form 8-K reporting the First Loan Share Conversion and the Third Loan Share Conversion, representing that the effective date of each transaction was December 31, 2019.  On that same date, twenty-five percent (25%) of the Company's shareholders sent a demand for a meeting regarding the Board's actions.

12

49.     As alleged above, the Directors who approved these transactions were not "qualified" directors (*i.e.* independent directors), as required by O.C.G.A. § 14-2-862.

***The February 2020 Events***

50.     On or about February 7, 2020, according to a filing with the Georgia Secretary of State, the Company filed Amended and Restated Articles of Amendment to Articles of Incorporation of Health Discovery Corporation (the "Amendment"). The Amendment amended the Company's articles of incorporation to authorize a new series of preferred stock called "Series D Preferred Stock," and to authorize the issuance of 21,158,953 shares of the Series D Preferred Stock.

51.     The Amendment:

a.     was filed on or about February 7, 2020, but was back-dated to August 1, 2018;

b.     purported to create and authorize the very same Series D Preferred Stock issued to Defendants McGovern and Dengler on or about December 31, 2019, pursuant to the terms of the Third Loan; and

c.     granted Defendants McGovern and Dengler voting power over approximately 211,000,000 shares of the Company's common stock, or approximately 54 percent.

113290680.v1

52.    According to the Company's Amended Form 10-K, filed May 14, 2020, there were 388,646,386 shares of common stock outstanding, no shares of Series A Preferred Stock outstanding, no shares of Series B Preferred Stock outstanding, no shares of Series C Preferred Stock outstanding, and 20,991,891 shares of Series D Preferred Stock outstanding.

53.    The Amended Form 10-K did not attach the Amendment as an Exhibit.

### Noncompliance with Federal Securities Laws and Regulations and Demand for Books and Records

54.    The Company has failed to make timely and complete filings with the Securities and Exchange Commission ("SEC") as required by federal securities laws and regulations.  The Company has failed to disclose material information to its investors, which includes, but is not limited to, (a) information about how much cash the Company has on hand, (b) the Company's use of the proceeds from the $6.6 million arbitration award to the Company from NeoGenomics, and (c) other material issues including, without limitation, (i) information concerning the Company's balance sheet; (ii) how much money has been paid to insiders as compensation; and (iii) amendments to the Company's articles of incorporation.

55.    McGovern and the Defendant Directors caused the Company to fail to comply with federal securities laws and regulations, including, without limitation:

113290680.v1

a.   Failing to file timely Forms 10-K and Forms 10-Q, as required by federal securities law.  For example, between March 30, 2016 and May 14, 2020, the Company did not file a Form 10-K.  During that same period, the Company did not file a Form 10-Q, except once, on or about November 21, 2016.

b.   Failing to timely file Forms 8-K for material events.

c.   Failing to timely update the Company's securities filings regarding amendments to the Company's articles of incorporation.

d.   Failing to hold an annual shareholder meeting for approximately three years.

56.   Despite appropriate notice and demand, Defendants have refused to permit Plaintiff to inspect and copy corporate records as requested in good faith and for a legitimate purpose pursuant to O.C.G.A. § 14-2-1602(b)–(d).

**Dilution of Public Shareholder Holdings and
Control Scheme by Defendants**

*Defendants McGovern and Dengler*

57.   By means of the foregoing transactions, Defendant McGovern and Defendant Directors effectuated a share conversion scheme that diluted the holdings of the public shareholders and allowed Defendant McGovern to exert control over the Company.

113290680.v1

58.     As alleged above, through the actions of Defendant McGovern and Defendant Directors, Defendant McGovern has received options to purchase 3,500,000 shares of the Company's common stock, exercisable at $0.003 per share.

59.     As alleged above, Defendants McGovern and Dengler, through the First Loan Conversion, converted the First Loan into 86,927,397 shares of the Company's common stock at a conversion price of $0.004 per share.

60.     Also as alleged above, McGovern and Dengler, through the Third Loan Conversion, converted the Third Loan into 21,158,953 shares of the Company's Series D Preferred Stock.

61.     On information and belief, Defendants McGovern and Dengler, through preexisting share ownership, the First Loan Share Conversion, and the exercise of stock options, purport to own approximately 150 million of the Company's common stock, or 33.3 percent of all authorized shares.

62.     Moreover, Defendants McGovern and Dengler control more than 50% of the voting power with their ownership of the Series D Preferred Stock.

63.     As alleged above, the Board's approval of these transactions was invalid because the directors who approved these transactions were not "qualified" directors (*i.e.*, "independent" directors), as required by O.C.G.A. § 14-2-862.

113290680.v1

*Defendants Delmonte, Morrison, Murphy, Hutchinson, and Fromholzer*

64.     Defendants McGovern and Defendant Directors also granted stock options to Defendant Directors.

65.     Through the actions of Defendant McGovern and Defendant Directors, Defendant Delmonte received options to purchase 3,500,000 shares of the Company's common stock, exercisable at $0.003 per share.

66.     Through the actions of Defendant McGovern and Defendant Directors, Defendant Morrison received from the Company:

        a.     options to purchase 2,000,000 shares of the Company's common stock, exercisable at $0.003 per share; and

        b.     options to purchase 2,000,000 shares of the Company's common stock, exercisable at $0.07 per share.

67.     Through the actions of Defendant McGovern and Defendant Directors, Defendant Murphy received from the Company:

        a.     options to purchase 2,000,000 shares of the Company's common stock, exercisable at $0.003 per share; and

        b.     options to purchase 2,000,000 shares of the Company's common stock, exercisable at $0.07 per share.

113290680.v1

68.     Through the actions of Defendant McGovern and Defendant Directors, Defendant Hutchinson received from the Company options to purchase 2,000,000 shares of the Company's common stock, exercisable at $0.07 per share.

69.     Through the actions of Defendant McGovern and Defendant Directors, Defendant Fromholzer received from the Company options to purchase 2,000,000 shares of the Company's common stock, exercisable at $0.07 per share.

70.     As alleged above, the Board's approval of these transactions was invalid because the directors who approved these transactions were not "qualified" directors (i.e., "independent" directors), as required by O.C.G.A. § 14-2-862.

**Unjust Enrichment of Defendants**

71.     By means of the actions alleged above, Defendants have unjustly enriched themselves at the expense of the Company and its shareholders.

72.     Through the actions of Defendant McGovern and Defendant Directors, Defendants McGovern and Dengler received from the Company:

a.      $330,434 in proceeds and 86,927,397 shares of the Company's common stock from the First Loan, First Loan Maturity Date Extension, and First Loan Share Conversion;

b.      $362,000 in proceeds from the Second Loan; and

18

c.      21,158,953 shares of Series D Preferred Stock, and 42,317,906 warrants, each of which entitled the holder to purchase one share of the Company's common stock from the Third Loan and Third Loan Share Conversion.

73.     Through the actions of Defendant McGovern and Defendant Directors, Defendant McGovern has also received from the Company:

a.      approximately $450,000 over the past three years at the salary of $150,000 per year; and

b.      options to purchase 3,500,000 shares of the Company's common stock, exercisable at $0.003 per share.

74.     Through the actions of Defendant McGovern and Defendant Directors, Defendant Delmonte received options to purchase 3,500,000 shares of the Company's common stock, exercisable at $0.003 per share.

75.     Through the actions of Defendant McGovern and Defendant Directors, Defendant Morrison received from the Company:

a.      options to purchase 2,000,000 shares of the Company's common stock, exercisable at $0.003 per share; and

b.      a $20,000 bonus and options to purchase 2,000,000 shares of the Company's common stock, exercisable at $0.07 per share.

76.     Through the actions of Defendant McGovern and Defendant Directors, Defendant Murphy received from the Company:

      a.     options to purchase 2,000,000 shares of the Company's common stock, exercisable at $0.003 per share; and

      b.     a bonus of $20,000 and an option to purchase 2,000,000 shares of the Company's common stock, exercisable at $0.07 per share.

77.     Through the actions of Defendant McGovern and Defendant Directors, Defendant Hutchinson received from the Company a bonus of $20,000 and an option to purchase 2,000,000 shares of the Company's common stock, exercisable at $0.07 per share.

78.     Through the actions of Defendant McGovern and Defendant Directors, Defendant Fromholzer received from the Company a bonus of $20,000 and an option to purchase 2,000,000 shares of the Company's common stock, exercisable at $0.07 per share.

## Allegations Required by Rule 23.1(b)

79.     Plaintiff was a shareholder at the time of all of the transactions described above.

80.     This action is not a collusive one to confer jurisdiction that the court would otherwise lack.

113290680.v1

81.    Plaintiff has made efforts to obtain the desired action from Defendant McGovern and Defendant Directors, including, without limitation, the following:

82.    On or about April 7, 2019, Plaintiff offered to pay off the First Loan pursuant to a $2.4 million financing package.  The Board rejected this proposal, made no counter proposal, and did not discuss the terms of the proposed financing by Plaintiff.

83.    On information and belief, the Board rejected Plaintiff's proposal in order to further enrich Defendant McGovern, Defendant Directors, and Defendant Dengler, and to effectuate McGovern's and Dengler's control over the Company.

84.    On or about October 2, 2019, Plaintiff and other shareholders sent a formal written request under O.C.G.A. §§ 14-2-1602(b) and (c) to inspect and copy certain corporate records (the "Demand Letter").

85.    The Demand Letter also served as a derivative demand on the Company to investigate the alleged misconduct described in the Demand Letter and this Verified Shareholder Derivative Complaint.

86.    Defendant McGovern and Defendant Directors failed to furnish corporate records for inspecting and copying or otherwise comply with the Demand Letter.

113290680.v1

## FIRST CLAIM FOR RELIEF

### BREACH OF FIDUCIARY DUTY

### (O.C.G.A § 14-2-830 & § 14-2-842)

### Against Defendant McGovern and Defendant Directors

87.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

88.    Defendant McGovern and Defendant Directors owed the Company and its shareholders a fiduciary duty.

89.    Defendant McGovern and Defendant Directors breached that duty by participating in a course of action designed to gain and to exert control over the Company and to divert corporate assets, in violation of O.C.G.A. §§ 14-2-830 and 14-2-842.

90.    As alleged above, Defendant McGovern and Defendant Directors failed to exercise their fiduciary duty, and breached their fiduciary duty, by approving or granting the McGovern-Dengler Loans, salaries, bonuses and stocks options, the Amendment, failing to inform shareholders of these events with timely and accurate securities filings, and failing to hold shareholder meetings.

113290680.v1

91.     As alleged above, the actions of Defendant McGovern and Defendant Directors have caused the dilution of the holdings of public shareholders and diminished the value of the Company.

92.     As a proximate result of Defendant McGovern's and Defendant Directors' conduct, including but not limited to their breach of O.C.G.A. §§ 14-2-830 and 14-2-842, Plaintiff and the Company have sustained actual damages in an amount to be determined at trial but in no event less than $75,000.  Having breached their fiduciary duty, Defendants should be required to disgorge all ill-begotten gains, benefits and entitlements.

93.     Further, Defendants have acted in concert, and jointly and severally, with willful and wanton indifference, such that punitive damages under applicable Georgia law, including O.C.G.A. § 51-12-5.1, are warranted, in an amount left to the enlightened conscience of the trier of fact but in no event less than $1,000,000.

94.     Further, Defendants' actions, jointly and severally, demonstrate a conscious indifference to the rights of Plaintiff and the Company and evidence a specific intent to cause financial harm such that any applicable statutory cap on punitive damages shall be disregarded.

113290680.v1

95.     Further, Defendants have acted in bad faith and have caused Plaintiff unnecessary trouble and expense. Therefore, Plaintiff is entitled to its expenses of litigation, including its reasonable attorneys' fees under O.C.G.A. § 13-6-11.

## SECOND CLAIM FOR RELIEF

## BREACH OF DUTY OF GOOD FAITH

## (O.C.G.A § 14-2-830 & § 14-2-842)

### Against Defendant McGovern and Defendant Directors

96.     Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

97.     Defendant McGovern and Defendant Directors owed the Company and its shareholders a duty of good faith.

98.     Defendant McGovern and Defendant Directors breached that duty by participating in a course of action designed to gain and to exert control over the Company and to divert corporate assets, in violation of O.C.G.A. §§ 14-2-830 and 14-2-842.

99.     As alleged above, Defendant McGovern and Defendant Directors failed to exercise their duty of good faith, and breached their duty of good faith, by approving or granting the McGovern-Dengler Loans, salaries, bonuses and stocks

options, the Amendment, failing to inform shareholders of these events with timely and accurate securities filings, and failing to hold shareholder meetings.

100.   As alleged above, the actions of Defendant McGovern and Defendant Directors have caused the dilution of the holdings of public shareholders and diminished the value of the Company.

101.   As a proximate result of Defendant McGovern's and Defendant Directors' conduct, including but not limited to their breach of O.C.G.A. §§ 14-2-830 and 14-2-842, Plaintiff and the Company have sustained actual damages in an amount to be determined at trial but in no event less than $75,000.

102.   Further, Defendants have acted in concert, and jointly and severally, with willful and wanton indifference, such that punitive damages under applicable Georgia law, including O.C.G.A. § 51-12-5.1, are warranted, in an amount left to the enlightened conscience of the trier of fact but in no event less than $1,000,000.

103.   Further, Defendants' actions, jointly and severally, demonstrate a conscious indifference to the rights of Plaintiff and the Company and evidence a specific intent to cause financial harm such that any applicable statutory cap on punitive damages shall be disregarded.

104.   Further, Defendants have acted in bad faith and have caused Plaintiff unnecessary trouble and expense. Therefore, Plaintiff is entitled to its expenses of litigation, including its reasonable attorneys' fees under O.C.G.A. § 13-6-11.

### THIRD CLAIM FOR RELIEF

### BREACH OF DUTY OF CARE

### (O.C.G.A § 14-2-830 & § 14-2-842)

### Against Defendant McGovern and Defendant Directors

105.   Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

106.   Defendant McGovern and Defendant Directors owed the Company and its shareholders a duty of care.

107.   Defendant McGovern and Defendant Directors breached that duty by participating in a course of action designed to gain and to exert control over the Company and to divert corporate assets, in violation of O.C.G.A. §§ 14-2-830 and 14-2-842.

108.   As alleged above, Defendant McGovern and Defendant Directors failed to exercise their duty of care, and breached their duty of care, by approving or granting the McGovern-Dengler Loans, salaries, bonuses and stocks options, the

Amendment, failing to inform shareholders of these events with timely and accurate securities filings, and failing to hold shareholder meetings.

109.   As alleged above, the actions of Defendant McGovern and Defendant Directors have caused the dilution of the holdings of public shareholders and diminished the value of the Company.

110.   As a proximate result of Defendant McGovern's and Defendant Directors' conduct, including but not limited to their breach of O.C.G.A. §§ 14-2-830 and 14-2-842, Plaintiff and the Company have sustained actual damages in an amount to be determined at trial but in no event less than $75,000.

111.   Further, Defendants have acted in concert, and jointly and severally, with willful and wanton indifference, such that punitive damages under applicable Georgia law including O.C.G.A. § 51-12-5.1, are warranted, in an amount left to the enlightened conscience of the trier of fact but in no event less than $1,000,000.

112.   Further, Defendants' actions, jointly and severally, demonstrate a conscious indifference to the rights of Plaintiff and the Company and evidence a specific intent to cause financial harm such that any applicable statutory cap on punitive damages shall be disregarded.

113290680.v1

113.   Further, Defendants have acted in bad faith and have caused Plaintiff unnecessary trouble and expense. Therefore, Plaintiff is entitled to its expenses of litigation, including its reasonable attorneys' fees under O.C.G.A. § 13-6-11.

## FOURTH CLAIM FOR RELIEF

### BREACH OF DUTY OF LOYALTY

### (O.C.G.A § 14-2-830 & § 14-2-842)

### Against Defendant McGovern and Defendant Directors

114.   Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

115.   Defendant McGovern and Defendant Directors owed the Company and its shareholders a duty of loyalty.

116.   Defendant McGovern and Defendant Directors breached that duty by participating in a course of action designed to gain and to exert control over the Company and to divert corporate assets, in violation of O.C.G.A. §§ 14-2-830 and 14-2-842.

117.   As alleged above, Defendant McGovern and Defendant Directors failed to exercise their duty of loyalty, and breached their duty of loyalty, by approving or granting the McGovern-Dengler Loans, salaries, bonuses and stocks options, the

Amendment, failing to inform shareholders of these events with timely and accurate securities filings, and failing to hold shareholder meetings.

118.   As alleged above, the actions of Defendant McGovern and Defendant Directors have caused the dilution of the holdings of public shareholders and diminished the value of the Company.

119.   As a proximate result of Defendant McGovern's and Defendant Directors' conduct, including but not limited to their breach of O.C.G.A. §§ 14-2-830 and 14-2-842, Plaintiff and the Company have sustained actual damages in an amount to be determined at trial but in no event less than $75,000.

120.   Further, Defendants have acted in concert, and jointly and severally, with willful and wanton indifference, such that punitive damages under applicable Georgia law, including O.C.G.A. § 51-12-5.1, are warranted, in an amount left to the enlightened conscience of the trier of fact but in no event less than $1,000,000.

121.   Further, Defendants' actions, jointly and severally, demonstrate a conscious indifference to the rights of Plaintiff and the Company and evidence a specific intent to cause financial harm such that any applicable statutory cap on punitive damages shall be disregarded.

113290680.v1

122.   Further, Defendants have acted in bad faith and have caused Plaintiff unnecessary trouble and expense. Therefore, Plaintiff is entitled to its expenses of litigation, including its reasonable attorneys' fees under O.C.G.A. § 13-6-11.

## FIFTH CLAIM FOR RELIEF

**Aiding and Abetting Breach of Fiduciary Duty,
Duty of Good Faith, Duty of Care, and Duty of Loyalty**

**Against All Defendants**

123.   Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

124.   Defendant McGovern and Defendant Directors owed the Company and its shareholders a fiduciary duty, a duty of good faith, a duty of care, and a duty of loyalty.

125.   As alleged above, Defendant McGovern and Defendant Directors breached those duties.

126.   Each and every Defendant aided and abetted those breaches of duty, and aided and abetted each other, by providing substantial assistance to Defendants McGovern and Defendant Directors in the course of their breaches of duty.

127.   As a proximate result of such conduct, Plaintiff and the Company have sustained actual damages in an amount to be determined at trial but in no event less than $75,000.

113290680.v1

128.   Further, Defendants have acted in concert, and jointly and severally, with willful and wanton indifference, such that punitive damages under applicable Georgia law, including O.C.G.A. § 51-12-5.1, are warranted, in an amount left to the enlightened conscience of the trier of fact but in no event less than $1,000,000.

129.   Further, Defendants' actions, jointly and severally, demonstrate a conscious indifference to the rights of Plaintiff and the Company and evidence a specific intent to cause financial harm such that any applicable statutory cap on punitive damages shall be disregarded.

130.   Further, Defendants have acted in bad faith and have caused Plaintiff unnecessary trouble and expense. Therefore, Plaintiff is entitled to its expenses of litigation, including its reasonable attorneys' fees under O.C.G.A. § 13-6-11.

## SIXTH CLAIM FOR RELIEF

### Waste of Corporate Assets

### (O.C.G.A. § 14-2-832)

### Against Defendant McGovern and Defendant Directors

131.   Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

113290680.v1

132.   Defendant McGovern and Defendant Directors owed the Company and its shareholders a fiduciary duty, a duty of good faith, a duty of care, and a duty of loyalty.

133.   As alleged above, Defendant McGovern and Defendant Directors breached those duties.

134.   Through the actions of Defendant McGovern and Defendant Directors, Defendants received the McGovern-Dengler Loans, salaries, bonuses, and stock options from the Company.

135.   By failing to properly consider the interests of the Company and its public shareholders, failing to conduct proper supervision, causing the Company to incur debt and giving away salaries, bonuses, and stock options, Defendant McGovern and Defendant Directors have caused the Company to waste valuable corporate assets.

136.   As a proximate result of such conduct, Plaintiff and the Company have sustained actual damages in an amount to be determined at trial but in no event less than $75,000.

137.   Further, Defendants have acted in concert, and jointly and severally, with willful and wanton indifference, such that punitive damages under applicable

Georgia law, including O.C.G.A. § 51-12-5.1, are warranted, in an amount left to the enlightened conscience of the trier of fact but in no event less than $1,000,000.

138.   Further, Defendants' actions, jointly and severally, demonstrate a conscious indifference to the rights of Plaintiff and the Company and evidence a specific intent to cause financial harm such that any applicable statutory cap on punitive damages shall be disregarded.

139.   Further, Defendants have acted in bad faith and have caused Plaintiff unnecessary trouble and expense. Therefore, Plaintiff is entitled to its expenses of litigation, including its reasonable attorneys' fees under O.C.G.A. § 13-6-11.

<u>**SEVENTH CLAIM FOR RELIEF**</u>

**UNLAWFUL DISTRIBUTIONS**

**(O.C.G.A. § 14-2-832)**

**Against Defendant McGovern and Defendant Directors**

140.   Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

141.   Defendant McGovern and Defendant Directors owed the Company and its shareholders a fiduciary duty, a duty of good faith, a duty of care, and a duty of loyalty.

33

142.   As alleged above, Defendant McGovern and Defendant Directors breached those duties.

143.   Defendant McGovern and Defendant Directors caused the Company to enter into the McGovern-Dengler Loans, thereby causing the Company to incur debt owed to Defendants McGovern and Dengler and giving certain rights and assets of the Company to Defendants McGovern and Dengler, which allowed them to exert control over the Company and to enrich themselves.

144.   Defendant McGovern and Defendant Directors also caused the Company to grant stock options to Defendant McGovern and Defendant Directors, which furthered the effort by Defendants McGovern and Dengler to exert control over the Company and to enrich themselves.

145.   The McGovern-Dengler Loans, the conversion of stock pursuant to the terms of the McGovern-Dengler Loans, the stock options, and the compensation paid to Defendants constitute unlawful distributions under O.C.G.A. § 14-2-832.

146.   Further, Defendants have acted in concert, and jointly and severally, with willful and wanton indifference, such that punitive damages under applicable Georgia law, including O.C.G.A. § 51-12-5.1, are warranted, in an amount left to the enlightened conscience of the trier of fact but in no event less than $1,000,000.

113290680.v1

147.   Further, Defendants' actions, jointly and severally, demonstrate a conscious indifference to the rights of Plaintiff and the Company and evidence a specific intent to cause financial harm such that any applicable statutory cap on punitive damages shall be disregarded.

148.   Further, Defendants have acted in bad faith and have caused Plaintiff unnecessary trouble and expense. Therefore, Plaintiff is entitled to its expenses of litigation, including its reasonable attorneys' fees under O.C.G.A. § 13-6-11.

## EIGHTH CLAIM FOR RELIEF

### UNJUST ENRICHMENT AND RESTITUTION

### Against All Defendants

149.   Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

150.   As a result of Defendants' actions, Defendants will be and have been unjustly enriched at the expense of the Company, in the form of receipts of salaries, benefits, bonuses, stock options, and stock pursuant to the terms of the McGovern-Dengler Loans.

151.   Further, Defendants have acted in concert, and jointly and severally, with willful and wanton indifference, such that punitive damages under applicable

113290680.v1

Georgia law, including O.C.G.A. § 51-12-5.1, are warranted, in an amount left to the enlightened conscience of the trier of fact but in no event less than $1,000,000.

152.   Further, Defendants' actions, jointly and severally, demonstrate a conscious indifference to the rights of Plaintiff and the Company and evidence a specific intent to cause financial harm such that any applicable statutory cap on punitive damages shall be disregarded.

153.   Further, Defendants have acted in bad faith and have caused Plaintiff unnecessary trouble and expense. Therefore, Plaintiff is entitled to its expenses of litigation, including its reasonable attorneys' fees under O.C.G.A. § 13-6-11.

<u>NINTH CLAIM FOR RELIEF</u>

**RESCISSION AND RESTITUTION**

**Against Defendants McGovern and Dengler**

154.   Plaintiff incorporates by reference and realleges each and every allegation contained above as though fully set forth herein.

155.   HDC entered into the McGovern-Dengler Loans through Defendants' breaches of fiduciary duties and abuse of control.  Further, the stock, stock options, cash, and other rights purportedly granted to McGovern and Dengler thereunder were not validly authorized and are thus invalid.

156. The McGovern-Dengler Loans and stock conversions should, therefore, be rescinded and restitution should be made, with all sums paid under such contracts returned to the Company, and all such executory contracts cancelled and declared void *ab initio*.

157. Further, Defendants have acted in concert, and jointly and severally, with willful and wanton indifference, such that punitive damages under applicable Georgia law, including O.C.G.A. § 51-12-5.1, are warranted, in an amount left to the enlightened conscience of the trier of fact but in no event less than $1,000,000.

158. Further, Defendants' actions, jointly and severally, demonstrate a conscious indifference to the rights of Plaintiff and the Company and evidence a specific intent to cause financial harm such that any applicable statutory cap on punitive damages shall be disregarded.

159. Further, Defendants have acted in bad faith and have caused Plaintiff unnecessary trouble and expense. Therefore, Plaintiff is entitled to its expenses of litigation, including its reasonable attorneys' fees under O.C.G.A. § 13-6-11.

113290680.v1

# TENTH CLAIM FOR RELIEF

## DECLARATORY JUDGMENT

### Against all Defendants

160.   Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

161.   Defendants participated in a course of action designed to gain and to exert control over the Company and to divert corporate assets.

162.   As alleged above, Defendant McGovern and Defendant Directors breached their duties owed to the Company and its public shareholders by approving or granting the McGovern-Dengler Loans, salaries, bonuses and stocks options, the Amendment, and failing to inform shareholders of these events with timely and accurate securities filings, and failing to hold shareholder meetings.

163.   As alleged above, Defendant McGovern and Defendant Directors action have caused the dilution of the holdings of public shareholders.

164.   As alleged above, the Board's approval of the forgoing was invalid because the directors who approved these transactions were not "qualified" directors (*i.e.*, "independent" directors), as required by O.C.G.A. § 14-2-862.

113290680.v1

165.   Accordingly, the Court should declare the McGovern-Dengler Loans, and the purported grants to Defendants of stock options, salaries, bonuses and other rights, void *ab initio*.

166.   In addition, the Court should declare that the Company's adoption of the Amendment and issuance of Series D Preferred Stock were *ultra vires* acts and are void *ab initio*.

## ELEVENTH CLAIM FOR RELIEF

### INJUNCTIVE RELIEF FOR *ULTRA VIRES* ACTS

### (O.C.G.A. § 14-2-304)

### Against all Defendants

167.   Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

168.   The Company's power to act may be challenged in a proceeding by a shareholder against the corporation to enjoin the act under O.C.G.A. § 14-2-304(b)(l).

169.   Pursuant to O.C.G.A. § 14-2-304(b)(l), the Court should enjoin the unauthorized acts of the Company, alleged above.

170.   Enjoining such acts is equitable and all affected persons are parties to the proceeding. O.C.G.A. § 14-2-304(c).

113290680.v1

171.   Further, Defendants have acted in concert, and jointly and severally, with willful and wanton indifference, such that punitive damages under applicable Georgia law, including O.C.G.A. § 51-12-5.1, are warranted, in an amount left to the enlightened conscience of the trier of fact but in no event less than $1,000,000.

172.   Further, Defendants' actions, jointly and severally, demonstrate a conscious indifference to the rights of Plaintiff and the Company and evidence a specific intent to cause financial harm such that any applicable statutory cap on punitive damages shall be disregarded.

173.   Further, Defendants have acted in bad faith and have caused Plaintiff unnecessary trouble and expense. Therefore, Plaintiff is entitled to its expenses of litigation, including its reasonable attorneys' fees under O.C.G.A. § 13-6-11.

## TWELFTH CLAIM FOR RELIEF

### DEMAND TO INSPECT AND COPY CORPORATE RECORDS

### (O.C.G.A. § 14-2-602)

### Against Defendant McGovern and Defendant Directors

174.   Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

175.   Defendants possessed complete and unfettered control over the books and records of the Company concerning, among other things, the details of the improper actions alleged above.

176.   Plaintiff has provided Defendants with a timely and appropriate written demand that it be permitted to inspect and copy records of HDC described in O.C.G.A. § 14-2-1602(c).

177.   Plaintiff's demand was made in good faith and for a proper purpose reasonably relevant to its legitimate interests as shareholder.

178.   Plaintiff's demand described the corporate records it desired to inspect with reasonable particularity.

179.   The records requested are directly connected to Plaintiff's stated purpose.

180.   The records will only be used for Plaintiff's stated purpose.

181.   Defendant McGovern and Defendant Directors have refused to provide Plaintiff with an opportunity to inspect and copy the requested corporate records, despite appropriate notice and demand.

113290680.v1

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court enter a judgment in its favor and against all Defendants, jointly and severally, and that the Court award the following relief:

a.      Awarding money damages, against all defendants, in an amount to be determined at trial but in no event less than $75,000, together with pre- and post-judgment interest at the maximum allowable rate;

b.      Ordering Defendants to disgorge all ill-begotten gains, benefits and entitlements derived from their breach of their fiduciary duties and duties of loyalty;

c.      Awarding punitive damages, against all Defendants, in an amount left to the enlightened conscience of the trier of fact but in no event less than $1,000,000;

d.      Awarding attorneys' fees under applicable Georgia 1aw, together with litigation costs and expenses;

e.      Declaring *void ab initio*:

i.      the Board's approval of the First Loan, and the purported grants of stock, stock options, warrants, cash, and other rights granted to McGovern and Dengler thereunder;

113290680.v1

ii.        the Board's grant, on or about October 23, 2017, of options to purchase 3,500,00 shares of common stock to Defendant Directors McGovern and Delmonte

iii.        the Board's grant, on or about October 23, 2017, of options to purchase 2,000,000 shares of common stock to Defendant Directors Morrison and Murphy;

iv.        the Board's grant, on or about October 23, 2017, of an annual salary of $150,000 to McGovern as CEO;

v.        Defendants McGovern's and Dengler's appointment, on or about May 9, 2018, of Defendant Directors Hutchinson and Fromholzer to the Board;

vi.        the Board's approval, on or about April 22, 2019, of the proposal from McGovern and Dengler to extend the maturity date of the First Loan from January 1, 2019 to July 31, 2019 in exchange for 5% of the NeoGenomics Arbitration award;

vii.        the Board's approval of the Second Loan, and the purported grants of cash, and other rights granted to McGovern and Dengler thereunder;

viii.        the Board's approval of the Third Loan, and the purported grants of stock, stock options, warrants, cash, and other rights granted to McGovern and Dengler thereunder;

113290680.v1

    ix.      the Company's issuance of Series D Preferred Stock;

    x.      Defendants McGovern's and Dengler's conversion of the Third Loan into 21,158,953 shares of the Company's Series D Preferred Stock;

    xi.      the post-dated Amendment creating the Series D Preferred Stock;

    xii.      the Board's issuance, on or about June 10, 2019, of a $20,000 bonus and of options to purchase 2,000,000 shares of common stock to Defendants Fromholzer, Hutchinson, Morrison and Murphy; and

    xiii.      the actions taken at Shareholder's Meeting on May 27, 2020.

    f.      Entering injunctive relief enjoining Defendants from:

    i.      entering the Company into any loans with the Directors, Dengler, or their affiliates;

    ii.      issuing or paying, or agreeing to issue or to pay, any new compensation, stock, stock options, warrants, or other assets to Directors, Dengler, or their affiliates;

    iii.      exercising any purported right under the McGovern-Dengler Loans;

    iv.      transferring, converting, or exercising any right or any voting power derived from any of the common stock, preferred stock, stock options, or warrants at issue in this Verified Shareholder Derivative Complaint;

v.      amending the Company's bylaws or articles of incorporation;

vi.      authorizing or issuing any new shares of common or preferred stock; and

vii.      taking any other actions except those necessary to the day-to-day operations of the Company;

g.      Ordering restitution and the imposition of a constructive trust over Defendants' stock options and proceeds and any other gains, benefits and entitlements to which Defendants should be ordered to be disgorged all for the benefit of the Company.

h.      Ordering the Company to comply with Plaintiff's demand to inspect and copy corporate records.

i.      Granting any such other and further relief as this Court may deem just and proper.

## **JURY DEMAND**

Plaintiff demands a trial by jury.

113290680.v1

Dated: August 14, 2020

FOX ROTHSCHILD LLP

*/s/ Robert J. Kaufman*

_____

Robert J. Kaufman
Georgia Bar No. 409197
999 Peachtree St NE
Suite 1500
Atlanta, GA 30309
(404) 870-3770
rkaufman@foxrothschild.com

-and-

MUKASEY FRENCHMAN & SKLAROFF LLP
Robert S. Frenchman
New York Bar No. 2582880
2 Grand Central Tower
140 E. 45th St., 17th Floor
New York, New York
(212) 466-6400
robert.frenchman@mfsllp.com
*Pro Hac Vice Application Pending*

*Attorneys for VennWest Global Technologies Inc.*

113290680.v1